UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

ELIZABETH S. GEBO,

     *Plaintiff,*

v.

TOWN OF CHILMARK and               C.A. No. _____
BRIAN A. CIOFFI, *individually,*

     *Defendants.*

---

## **COMPLAINT**

1.      The Plaintiff, Elizabeth Gebo ("Plaintiff" or "Gebo"), brings this action to seek redress for sex and disability discrimination that she experienced during a time when she was the sole female, full-time police officer employed by the Defendant Town of Chilmark ("the Town"). During that time, the Town's chief of police, Defendant Brian Cioffi ("Cioffi") initiated a sexual relationship with Plaintiff, his subordinate, that was coercive and that caused Plaintiff to experience considerable emotional distress. After the relationship ended for the last time, then-Chief Cioffi intentionally misled Plaintiff concerning her eligibility for employment, in retaliation for her refusal to engage in a sexual relationship with him, in effort to cover up the relationship, and in an act of unlawful disability discrimination. The result was the loss of Plaintiff's job and the dashing of dreams that Plaintiff had held since her childhood.

## PARTIES

2.      The Plaintiff, Elizabeth Gebo, is a woman who resides in Massachusetts.

3.      The Defendant, Town of Chilmark ("the Town"), is a municipality in the Commonwealth of Massachusetts with a mailing address of 401 Middle Road, Chilmark, MA 02535-0119, and at all times relevant hereto the Town maintained a police department ("the Department"), where Plaintiff was formerly employed, as set forth in more detail herein.  "The Town" and "the Department" are sometimes used interchangeably herein.

4.      The Defendant, Brian Cioffi, is a man who resides in Massachusetts.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiff's federal claims, pursuant to 28 U.S.C. § 1331.

6.      This Court also has subject matter jurisdiction over Plaintiff's remaining, state-law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal-question claims as to form a part of the same case or controversy under Article III of the U.S. Constitution.

7.      All Defendants in this action are citizens of Massachusetts, and the actions and omissions at issue in this action took place in Massachusetts, and therefore, all are subject to personal jurisdiction here.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the Defendants reside in this district and because the acts and omissions at issue in this complaint took place in this district.

**FACTS**

9.      Since Plaintiff was a child, she dreamed of becoming a police officer.

10.     The Town is located on the island of Martha's Vineyard ("the Island").

11.     At all times relevant hereto, the Department had approximately 4-5 permanent, full-time police officers.

12.     The Town is a popular tourist destination during the summer months.

13.     Accordingly, the Department employs more law enforcement personnel during the busy season, and the officers generally work more shifts.

14.     During the colder months, officers generally work fewer shifts.

15.     In 2008, when Plaintiff was 20 years old, the Department hired her as a traffic officer during the summer months.

16.     At the time, Cioffi, who is male and who was approximately 33 years old at the time, was a patrol officer also employed by the Department.

17.     Cioffi became friends with Plaintiff, and they socialized together often.

18.     In or about June 2009, the Department reappointed Plaintiff as reserve intermittent officer (commonly called a "special" officer) in the Department.

19.     In or about July 2009, the Town's Board of Selectmen ("BOS") appointed Cioffi to be the Department's Chief of Police.

20.     Cioffi was Chief of the Department for the duration of the time that Plaintiff worked there thereafter.

21.     In the spring of 2010, Plaintiff began working full-time for the duration of the Town's busy summer season.

22.     In the fall and winter of 2010, Plaintiff frequently worked shifts at the Department and with Cioffi.

23.     It was unusual for a special officer to be assigned so many shifts during the off-season, but Plaintiff believed the shifts were being assigned to her due to a number of break-ins in the area.

24.     In late February 2011, Plaintiff was scheduled to work alone on an evening shift.

25.     As this time of year was generally quiet, it was common for officers to work alone.

26.     Cioffi was working that shift as well, although, on information and belief, he was not scheduled to work.

27.     It was also unusual for Cioffi to work on a winter night when another officer was on duty.

28.     Cioffi joined Plaintiff in her patrol car, claiming that he did so because he feared that there would be "gang bangers from New Bedford," or words to that effect, and that Plaintiff would be unable to handle them alone.

29.     Later that night, when they were alone and driving on a dirt road, Cioffi asked Plaintiff, "What would you do if I kissed you?"

30.     Perplexed, Plaintiff laughed because she thought he was joking and because she did not know how else to respond.

31.     Cioffi effectively repeated the question, asking Plaintiff what she would do if he leaned over and kissed her, or words to that effect.

32.     Plaintiff's discomfort escalated.

33.     Again, unsure how to respond, Plaintiff laughed nervously.

34.     A song with suggestive lyrics came on the radio, to which Cioffi remarked, "You're killing me."

35.     At the end of the shift, Plaintiff and Cioffi returned to the station.

36.     As was often the case, no one else was present in the station aside from Plaintiff and Cioffi.

37.     Cioffi told Plaintiff he had sexual feelings for her, or words to that effect.

38.     Cioffi told Plaintiff, "Why do you think you've been getting so many shifts? I can work alone; I did it for years before I became chief," or words to that effect.

39.     As Cioffi had control over Plaintiff and her schedule, he told Plaintiff that he had been scheduling her to work shifts with him so he could spend time with her.

40.     Cioffi tried to kiss Plaintiff, but she said no.

41.      "Special" officers can be removed from the schedule or be terminated at any time without just cause.

42.     The police chief had/has the power to offer shifts to "special" officers as he or she sees fit.

43.     Cioffi routinely stated that he could remove "special" officers from the schedule whenever he wanted, and/or that he could just refuse to put them on the schedule at all.

44.     Indeed, there were several "special" officers on the roster who rarely worked shifts.

45.     As Plaintiff understood, Cioffi had the power to stop offering shifts to Plaintiff if he wanted to, without cause or explanation.

46.     Plaintiff also feared that Cioffi would mistreat her in the workplace if she did not accede to his wishes.

47.     Plaintiff observed that Cioffi periodically behaved in ways that were disrespectful, condescending or otherwise inappropriate toward Department employees whom he appeared to dislike.

48.     For example, he would criticize their job performance more harshly or make unkind statements about them outside of their earshot.

49.     Within a few days of his attempt to kiss Plaintiff, Cioffi stopped by her home when she was home alone.

50.     During a visit to Plaintiff's home, Cioffi kissed Plaintiff.

51.     In the pay period immediately following (February 27, 2011 through March 12, 2011), Plaintiff worked 66.5 hours, which was a lot for that time of year.

52.     In early March 2011, then-Chief Cioffi initiated a sexual relationship with Plaintiff, which lasted intermittently for several years.

53.     Around March of 2014, Plaintiff told Cioffi that she was ending the relationship. Cioffi responded by telling her she could not break up with him on his birthday.

54.     Cioffi joked several times that the day was "Steak and B.J. Day."

55.     Cioffi made Plaintiff feel guilty about ending the relationship.

56.     The sexual relationship between Cioffi and Plaintiff resumed, with periodic interruptions for several years.

57.     Throughout this period, Plaintiff made repeated efforts to end the relationship.

58.     Then-Chief Cioffi told Plaintiff to call him in the middle of the night, when she was on duty alone, so that he could come out and "help" her.

59.     Then-Chief Cioffi subjected Plaintiff to various threats and forms of intimidation.

60.     In one conversation, in or about August 2011, Plaintiff told then-Chief Cioffi that she was planning to become engaged to marry her now-husband.

61.     Cioffi responded by informing Plaintiff that he had created a special position in the Department for her.

62.     Plaintiff learned that Cioffi, without Plaintiff's knowledge, had worked with several other Martha's Vineyard police chiefs, as well as the sheriff, in order to create the position.

63.     Plaintiff felt that she could not turn the position down.

64.     Plaintiff was concerned that if she turned down the appointment, she would be unable to secure employment at another department on the Island in the future.

65.     The position also presented an opportunity to advance at other police departments on Martha's Vineyard.

66.     Plaintiff accepted the position.

67.     In the spring of 2012, Cioffi proposed adding another full-time position to the Department, and re-worked the Department's budget to make the addition possible.

68.     On June 19, 2012, Plaintiff was appointed to a full-time position in the Department.

69.     At the time, Plaintiff was the sole female, permanent full-time officer employed by the Department.

70.     During the summer of 2012, at the advice of Cioffi, Plaintiff began to take anti-depressant medication.

71.     Plaintiff's anti-depressant medication was a prescribed by the same physician who had administered Plaintiff's medical exam for the Department in 2010 and 2012.

72.     Plaintiff attended the police academy from September 2012 to February 2013.

73.     Plaintiff excelled in the police academy and, away from Cioffi, her mental health improved.

74.     Plaintiff returned home after graduation and her mental health began to decline.

75.     The relationship between Cioffi and Plaintiff grew more volatile beginning in 2013.

76.     Cioffi and Plaintiff argued frequently, both during and outside of work.

77.     Arguments between Cioffi and Plaintiff often included yelling.

78.     Plaintiff's depression worsened, and Plaintiff developed suicidal ideation.

79.     Cioffi was aware of Plaintiff's suicidal ideation and, when confronted with Plaintiff's worsening mental health, he became angry at her.

80.     Cioffi egged Plaintiff on when she spoke of her suicidal ideation.

81.     For example, Cioffi told Plaintiff that she "would not do it," or say that "she was lying" when she said she had intentionally taken too much medication.

82.     In late 2013, Plaintiff attempted suicide.

83.     Cioffi was aware of Plaintiff's suicidal ideation and attempts at suicide.

84.     Following her suicide attempt, Plaintiff was taken to the Emergency Room, where the treating physician recommended in patient treatment.

85.     At Cioffi's request, Plaintiff transferred her treatment to a police psychologist off the Island.

86.     Due to Cioffi's intervention, Plaintiff was released and cleared to return to work on restricted/light duty.

8

87.     However, Plaintiff was not able to work at that time, and she took approximately two (2) months off from work. Cioffi arranged for Plaintiff to continue to receive her wages without use of accrued sick or vacation time.

88.     Cioffi did not tell Plaintiff through what mechanism she would be paid during her medical leave, but instead told her that he would take care of it and that she did not need to worry about it.

89.     On information and belief, Cioffi arranged for the donation of sick time to Plaintiff.

90.     Following Plaintiff's suicide attempt, Cioffi ordered Plaintiff to attend a meeting with all full-time officers to explain why she was out of work.

91.     Plaintiff told the officers who attended the meeting that she had attempted suicide.

92.     Afterward, Cioffi became infuriated at Plaintiff and scolded her for telling the other officers.

93.     Plaintiff felt ashamed and embarrassed.

94.     Cioffi began accusing Plaintiff of lying about her suicide attempt.

95.     Plaintiff provided Cioffi with hospital records substantiating her mental health status and suicide attempt.

96.     At various times during their relationship, Plaintiff told Cioffi that she wanted to tell others, including the BOS and their respective spouses, about their relationship.

97.     Cioffi told Plaintiff that if she did that, nothing would be the same and that he would never forgive her if she told anyone.

98.     Cioffi also told Plaintiff that if she told the BOS about their relationship, they would both get fired.

99.     Plaintiff felt that the only way to end the relationship permanently was to expose it.

100.    Accordingly, Plaintiff stopped keeping the relationship a secret and disclosed it to her husband and Cioffi's wife.

101.    Cioffi was furious at the disclosure.

102.    On January 9, 2014, Plaintiff's psychiatrist wrote a letter to Cioffi clearing Plaintiff to return to work and to carry a firearm.

103.    Cioffi permitted Plaintiff to return to work, which Plaintiff did on or about January 10, 2014.

104.    When Plaintiff returned to work, Cioffi was aware of Plaintiff's mental health history.

105.    Upon Plaintiff's return to work and in retaliation for ending their relationship, Cioffi largely ignored Plaintiff, even when they were in the station at the same time.

106.    Plaintiff's mental health began to decline again, in large part due to Cioffi's behavior toward her in the workplace.

107.    Plaintiff again experienced suicidal ideation, of which Cioffi was aware.

108.    On several occasions, Plaintiff took large quantities of medication.

109.    By essentially daring Plaintiff to overdose on her medication, Cioffi openly encouraged her to commit suicide.

110.    Plaintiff found Cioffi's animosity toward her unbearable and felt pressured to once again resume their sexual relationship.

111.    On March 26, 2014, Plaintiff e-mailed Cioffi about a class called "Preventing and Addressing Workplace Discrimination for Employees" and asked him whether she should attend.

112.    Cioffi responded by e-mail, "NOOOOOOOOOO".

113.    During their relationship, Cioffi periodically behaved in ways that were coercive, intimidating or threatening to Plaintiff.

114.    For example, during the summer of 2014, Plaintiff and Cioffi engaged in an argument in a cruiser, while Plaintiff was on duty and Cioffi was not.

115.    When Plaintiff attempted to leave the cruiser, Cioffi grabbed Plaintiff by the arm, leaving bruises.

116.    Also during the summer of 2014, Cioffi threw a cell phone at Plaintiff's head; Plaintiff was able to move before it hit her.

117.    Cioffi once told Plaintiff that he was tempted to punch her and that he probably would if she did not leave the police station immediately.

118.    Cioffi told Plaintiff that if she got pregnant, she would get fired.

119.    He made this comment in the presence of the Town's then-labor counsel.

120.    The Town's labor counsel subsequently gave Cioffi a paper titled, "Comments on Pregnancy Support Gender Bias Claims."

121.    Cioffi left the paper in the women's locker room for Plaintiff as a "joke."

122.    Plaintiff terminated the relationship between her and Cioffi for the last time in or about August 2014.

123.    In late 2014, Cioffi told Plaintiff that the BOS had asked Plaintiff to pay back the sick time that was donated to her (with Cioffi's authorization) in 2013.

124.    Plaintiff was, understandably, reluctant; the time was granted to her with the Chief's authority and with no indication that it could be withdrawn.

125.    Cioffi encouraged Plaintiff to comply with the BOS's request.

126.    Plaintiff's mental health once again deteriorated.

127.    On or about December 19, 2014, then-Chief Cioffi sent Plaintiff an e-mail in which he threatened to place Plaintiff on administrative leave because of her mental health.

128.    On December 28, 2014, Plaintiff was constrained to seek a medical leave of absence due to her increasingly dire mental health situation.

129.    On January 8, 2015, Plaintiff received a written request to attend a BOS meeting on January 13, 2015.

130.    The notice indicated that the BOS wanted to discuss Plaintiff's request since it was made for medical reasons.

131.    Plaintiff attended the BOS meeting on January 13, 2015 and was fearful that the BOS would not grant her request for leave based on their claim that she "owed" the sick time that was donated to her.

132.    The BOS eventually granted Plaintiff's request for a one-year leave of absence.

133.    In February 2015, Plaintiff entered a voluntary in-patient mental health treatment and, thereafter, an outpatient program.

134.    While Plaintiff was in in-patient treatment, Plaintiff's psychologist stated his belief that Plaintiff had post-traumatic stress disorder.

135.    Around August, 2015, Plaintiff returned to Martha's Vineyard, following treatment.

136.    In or about early November 2015, Plaintiff decided to return to work before the expiration of one-year leave term.

137.    Plaintiff met with Cioffi in the police station on November 6, 2015.

138.    During their meeting, Cioffi told Plaintiff that her history of mood disorders made her *per se* unqualified to be a police officer and that she could not return to work.

139.    In reasonable reliance on Cioffi's statements, Plaintiff believed that she was barred from returning to her job because of her mood disorder(s).

140.    Cioffi even sent Plaintiff an excerpt of a document purporting to state that a history of mood disorders is disqualifying for police officers.

141.    Such excerpt was intentionally false, although Plaintiff did not know it at the time.

142.    In fact, Cioffi's actions were part of his scheme to manipulate Plaintiff, and continued his already substantial pattern of discrimination and retaliation against Plaintiff.

143.    As a result, and in reliance on Cioffi's statements, Plaintiff tendered a resignation letter.

144.    Plaintiff learned only after her resignation that the publication Cioffi had cited concerning mood disorders was not applicable to her, and was taken out of context.

145.    On or about August 31, 2016, Plaintiff filed an administrative charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the U.S. Equal Opportunity Employment Commission ("EEOC"), against Defendants Town of Chilmark and Cioffi (together "Defendants").

146.    On or about September 21, 2018, the MCAD granted Plaintiff's motion to amend her administrative charge to add claims of disability discrimination under G.L. c. 151B, § 4(16) and the ADA.

147.    On or about October 17, 2018, Plaintiff withdrew her claims against Defendants from the MCAD and EEOC, which thereafter authorized plaintiff to bring this action.

13

## PLAINTIFF'S CLAIMS

### COUNT I – DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF MASS. GEN. LAWS. c. 151B, § 4(1)  (TOWN OF CHILMARK)

148.    Plaintiff hereby repeats and reavers the allegations set forth in the preceding Paragraphs as if fully set forth herein.

149.    The Town discriminated against Plaintiff because of her sex, including but not limited to, by subjecting her to *quid pro quo* terms of employment, under which her refusal to engage in a sexual relationship with Cioffi adversely affected the terms and conditions of employment, as set forth herein.

150.    To wit, and without limitation, Cioffi (and, through him, the Town) constructively or actually terminated Plaintiff's employment because of Plaintiff's refusal to engage in a sexual relationship with him.

151.    The Town's actions were unlawful sex discrimination, pursuant to G.L. c. 151B, § 4(1).

WHEREFORE Plaintiff demands lost wages and benefits; compensation for emotional distress; punitive damages; attorneys' fees and costs; statutory interest, and all other relief this Court deems just and proper.

### COUNT II – DISCRIMINATION ON THE BASIS OF DISABILITY/HANDICAP IN VIOLATION OF MASS. GEN. LAWS. c. 151B, § 4(16) (TOWN OF CHILMARK)

152.    Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

153.    Plaintiff was diagnosed with bipolar disorder, anxiety disorder, post-traumatic stress disorder, and major depressive disorder (together "mental health disorders").

14

154.    Without limitation, Plaintiff's mental health disorders caused her, at various times, to experience suicidal ideation, to lose significant amounts of weight, and to suffer insomnia.

155.    At all times relevant to this complaint, the Town (through, without limitation, then-Chief Cioffi) had actual or constructive knowledge of Plaintiff's mental health disorders and the effects thereof.

156.    Plaintiff's mental health disorders, without limitation, substantially impair Plaintiff's major life functions of concentrating, sleeping and eating.

157.    Plaintiff's mental health disorders also substantially impair the function of Plaintiff's brain.

158.    Further, Plaintiff was "disabled" for the purposes of Chapter 151B and the ADA because Defendants regarded her as such.

159.    As set forth herein, the Town unlawfully discriminated against Plaintiff because of her mental health disabilities, including and without limitation, when it falsely represented to her that those conditions *per se* disqualified her from serving as a police officer and thereby induced her to resign her position.

160.    These actions violated G.L. c. 151B, § 4(16).

WHEREFORE Plaintiff demands lost wages and benefits; compensation for emotional distress; punitive damages; attorneys' fees and costs; statutory interest, and all other relief this Court deems just and proper.

## COUNT III – INTERFERENCE WITH RIGHTS/AIDING AND ABETTING IN VIOLATION OF MASS. GEN. LAWS. c. 151B (CIOFFI)

161.    Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

162.    By engaging in the actions and omissions set forth in this complaint, including without limitation by discriminating against Plaintiff on the basis of her sex and/or disability, then-Chief Cioffi violated G.L. c. 151B, § 4(4A) and (5).

WHEREFORE Plaintiff demands lost wages and benefits; compensation for emotional distress; punitive damages; attorneys' fees and costs; statutory interest, and all other relief this Court deems just and proper.

## COUNT IV – DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (TOWN OF CHILMARK)

163.    Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

164.    The Town's actions were unlawful sex discrimination, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a).

WHEREFORE Plaintiff demands lost wages and benefits; compensation for emotional distress; punitive damages; attorneys' fees and costs; statutory interest, and all other relief this Court deems just and proper.

## COUNT V – DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (TOWN OF CHILMARK)

165.    Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

166.     The actions set forth herein violated the Americans with Disabilities Act, 42

U.S.C. § 12112(a).

WHEREFORE Plaintiff demands lost wages and benefits; compensation for emotional distress;

punitive damages; attorneys' fees and costs; statutory interest, and all other relief this Court

deems just and proper.


### COUNT VI – UNLAWFUL RETALIATION IN VIOLATION OF
### MASS. GEN. LAWS. c. 151B (ALL DEFENDANTS)

167.     Plaintiff hereby repeats and reavers the allegations set forth in the preceding

paragraphs as if fully set forth herein.

168.     As set forth herein, Plaintiff engaged in activities protected by Chapter 151B and

Title VII, including without limitation, by declining to be in a sexual relationship with then-Chief

Cioffi and by refusing to keep that relationship a secret.

169.     In retaliation for Plaintiff's protected activity(ies), Defendants subjected Plaintiff

to adverse action(s), including and without limitation, by giving Plaintiff false information

concerning her eligibility to serve as a police officer and by actually or constructively

terminating her employment.

170.     These actions violated G.L. c. 151B, § 4(4) and (4A).

WHEREFORE Plaintiff demands lost wages and benefits; compensation for emotional distress;

punitive damages; attorneys' fees and costs; statutory interest, and all other relief this Court

deems just and proper.

## COUNT VII – UNLAWFUL RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (TOWN OF CHILMARK)

171.    Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

172.    As set forth herein, the Town subjected Plaintiff to adverse action(s), including and without limitation, by giving Plaintiff false information concerning her eligibility to serve as a police officer and by actually or constructively terminating her employment.

173.    These actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).

WHEREFORE Plaintiff demands lost wages and benefits; compensation for emotional distress; punitive damages; attorneys' fees and costs; statutory interest, and all other relief this Court deems just and proper.


## COUNT VIII – VIOLATION OF 42 U.S.C. § 1983 (ALL DEFENDANTS)

174.    Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

175.    Defendants subjected Plaintiff to unlawful discrimination because of her sex (female), including by subjecting her to sexual harassment and *quid pro quo* terms of employment, which violated Plaintiff's rights under the Equal Protection Clause of the Constitution.

176.    Defendants retaliated against Plaintiff for her exercise of her rights under the First Amendment, namely,  her disclosure of the sexual relationship between then-Chief Cioffi and herself.

177.     Defendants acted under color of state law and in violation of 42 U.S.C. § 1983, causing Plaintiff to suffer damages, including, but not limited to, damages for monetary losses, emotional distress, and other such damages.

WHEREFORE Plaintiff demands lost wages and benefits; compensation for emotional distress; punitive damages; attorneys' fees and costs; statutory interest, and all other relief this Court deems just and proper.


**COUNT IX – FRAUDULENT MISREPRESENTATION (CIOFFI)**

178.     Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

179.     Cioffi made a false representation of a material fact concerning Plaintiff's qualification to resume her position as an officer of the Department.

180.     Cioffi's statement was made with knowledge that it was false.

181.     That Cioffi knew his statement was false is evidenced, without by limitation, by the fact that he showed Plaintiff an excerpt of a regulation that purported to support his position but in actuality applied only to new hires.

182.     Cioffi acted with the intent of inducing Plaintiff to act thereon by not returning to work following her leave or, in the alternative, resigning her employment.

183.     As a result of the aforementioned actions, and reasonably believing she had no other viable option, Plaintiff submitted her resignation to the Town.

WHEREFORE Plaintiff demands lost wages and benefits; compensation for emotional distress; punitive damages; attorneys' fees and costs; statutory interest, and all other relief this Court deems just and proper.

## COUNT X – DETRIMENTAL RELIANCE/PROMISSORY ESTOPPEL (TOWN OF CHILMARK)

184.    Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

185.    Plaintiff reasonably relied on Cioffi's representation that her history of mood disorders disqualified her from being a police officer.

186.    As a result, Plaintiff resigned her position.

187.    The loss of Plaintiff's job was detrimental to her.

WHEREFORE Plaintiff demands lost wages and benefits; compensation for emotional distress; punitive damages; attorneys' fees and costs; statutory interest, and all other relief this Court deems just and proper.


## COUNT XI – TORTIOUS INTERFERENCE WITH CONTRACT (CIOFFI)

188.    Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

189.    Plaintiff and the Town were parties to a contract whereby Plaintiff provided services to the Town as a police officer.

190.    As set forth herein, then-Chief Cioffi wrongfully interfered with Plaintiff's employment in an effort to unlawfully retaliate against Plaintiff and/or to conceal his inappropriate sexual relationship with a subordinate (Plaintiff).

WHEREFORE Plaintiff demands lost wages and benefits; compensation for emotional distress; punitive damages; attorneys' fees and costs; statutory interest, and all other relief this Court deems just and proper.

20

**COUNT XII – DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 (TOWN OF CHILMARK)**

191.    Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

192.    At all times relevant to this complaint, the Town has been a recipient of federal financial assistance.

193.    Indeed, on information and belief, the Department benefits from federal funds, including, but not limited to, funds earmarked for bulletproof vests.

194.    The Town violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, when it materially altered the terms and conditions of Plaintiff's employment and constructively discharged her therefrom.

WHEREFORE Plaintiff demands lost wages and benefits; compensation for emotional distress; punitive damages; attorneys' fees and costs; statutory interest, and all other relief this Court deems just and proper.

**COUNT XIII – MASSACHUSETTS WAGE ACT, G.L. c. 149, § 148**

195.    Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

196.    Any agreement between the Town and Plaintiff under which she would "repay" the sick time donated to her was a void "special contract" under the Massachusetts Wage Act, G.L. c. 149, § 148 ("Wage Act")

197.    Upon Plaintiff's departure from employment, the Town failed to timely pay Plaintiff for her accrued vacation, personal and comp time, in the approximate amount of 120 hours.

198.    Plaintiff's accrued vacation, personal and comp time were "due and payable" and arithmetically determinable at the time of Plaintiff's departure from employment, and the Town's failure to timely pay Plaintiff therefor was a violation of the Wage Act.

199.    On October 25, 2018, Plaintiff filed a complaint concerning the foregoing failure to pay wages with the Massachusetts Attorney General's Office.

WHEREFORE Plaintiff demands her unpaid wages, treble damages, attorney' fees and costs; statutory interest, and all other relief this Court deems just and proper.


## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.


Respectfully Submitted,
ELIZABETH GEBO, Plaintiff,
By Her Attorneys,


 _/s/ Michaela C. May_
Michaela C. May (BBO# 676834)
mmay@bennettandbelfort.com
Todd J. Bennett (BBO# 643185)
tbennett@bennettandbelfort.com
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
(617) 577-8800


Date: October 26, 2018