UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 1:18-CV-12245-LTS

|  |  |
|---|---|
| ELIZABETH S. GEBO, | ) |
| *Plaintiff*, | ) |
| v. | ) |
| TOWN OF CHILMARK and BRIAN A. CIOFFI, *individually*, | ) |
| *Defendants*. | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR JUDGMENT ON THE PLEADINGS**

I.  *Introduction*

The deadline for amendments to the pleadings in this matter expired on June 14, 2019. The defendants, the Town of Chilmark ("Town") and its former Chief, Brian A. Cioffi ("Cioffi"), now move for judgment on the pleadings as to Counts I-VIII. As grounds for their Motion, the plaintiff's claims arising out of alleged sex discrimination in the form of *quid pro quo* sexual harassment, and a sexually hostile work environment, are time barred because the plaintiff not only failed to exhaust her claims within the three-hundred day window afforded by M.G.L. c. 151B – which also includes the 180 day window afforded by Title VII – but she also neglected to file her complaint within three years of the last purported sexually discriminatory act. For these reasons, the following counts should be dismissed:

- Count I, alleging a violation of Chapter 151B, Section 4(1) for sex discrimination;

- Count III, alleging aiding and abetting sexual harassment under Chapter 151B;

- Count IV, alleging a Title VII violation based on sexual harassment; and

- Count VIII, alleging a violation of the Fourteenth Amendment Equal Protection Clause based on sexual harassment and retaliation.

Further, Count VIII also alleges an alleged violation of the First Amendment for the plaintiff having exercised her right to disclose her sexual relationship with Cioffi. This claim also fails because it was brought outside the three-year statute of limitations applicable to claims pursued under the procedural vehicle 42 U.S.C. Section 1983, as the plaintiff allegedly disclosed the relationship in late 2013, five years before filing a civil action. Count III for aiding and abetting sex discrimination, which was only pleaded against Cioffi, also fails on other grounds, namely because a claim for aiding and abetting is not viable against the principal actor of the very same acts of purported discrimination. As such, Counts I, III, IV, and VIII (in part) should be dismissed.

As to Counts VI and VII, alleging retaliation under Title VI and Chapter 151B based on (1) the plaintiff ending her sexual relationship with Cioffi and (2) disclosing her relationship with him to their respective spouses, the sole alleged retaliatory act occurring within the 300-day filing window took place more than one year after the plaintiff and Cioffi's sexual relationship ended, and almost two years after she disclosed her sexual relationship with Cioffi to her husband and his wife. Well-settled case law in the First Circuit precludes claims for retaliation when the temporal proximity between the protected conduct and adverse action is so greatly attenuated. Further, there are insufficient facts to support any supposed acts of discrimination or any protected conduct occurring between the time the plaintiff left on medical leave in January 2015 and her conversation with Cioffi in November 2015. For these reasons, *inter alia*, Counts VI and VII cannot be sustained on these facts and should be dismissed.

Finally, Counts II and V alleging disability discrimination under M.G.L. c. 151B and the ADA also fail for not having properly been pleaded within the 300-day administrative window. Instead, the plaintiff amended her Charge to add disability discrimination claims despite those claims

having occurred prior to the filing date of her original Charge. The defendants opposed the amendment but the Commission granted the plaintiff leave to add the disability discrimination counts. In her original Charge, the plaintiff's alleged disability was pleaded as the purported pretext for "sex discrimination." In her Amended Charge, after the defendants had raised the procedural and jurisdictional deficiencies with the plaintiff's claims, the plaintiff changed course, and claimed that her disability (a supposed mood disorder) was the reason for the defendants' adverse conduct. Having not arisen out of the same set of facts as her original Charge for sex discrimination and retaliation, the plaintiff's disability claims under both federal and state law are also time-barred. This applies to Count III for aiding and abetting as well, although that count also fails on other grounds, as provided above and described in detail *infra*.

For these reasons, the court lacks jurisdiction as to the aforementioned claims, rendering Counts I-VII and VIII (partially) ripe for dismissal. What should remain after the plaintiff's claims are properly disposed of are the plaintiff's Fourteenth Amendment claim brought pursuant to Section 1983 for purported discrimination based on acts relating to the plaintiff's supposed disability which occurred within three years of the date of the Complaint (Count VIII, in part), the plaintiff's state law tort claims (Counts IX-XI), and her claim under the Rehabilitation Act (Count XII). The defendants intend to address these remaining claims on summary judgment.

Properly narrowing the plaintiff's Complaint at this time to solely viable legal claims and theories will ensure tailored and appropriate discovery in this matter while promoting fairness to the defendants, avoiding prejudice and disproportional discovery, confusion of the issues, and preserving judicial economy.

II.     *Standard of Review under Rule 12(c)*

Fed. R. Civ. P 12(c) allows for a party to move for judgment on the pleadings once the pleadings are closed and so long as trial will not be delayed. Fed. R. Civ. P 12(c). "A motion for

3

judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss." *Perez–Acevedo v. Rivero–Cubano,* 520 F.3d 26, 29 (1st Cir. 2008). However, "[a] Rule 12(c) motion, unlike a Rule 12(b) motion, implicates the pleadings as a whole." *Kimmel & Silverman, P.C. v. Porro,* 969 F. Supp. 2d 46, 49 (D. Mass. 2013) (quoting *Aponte-Torres v. Univ. of Puerto Rico,* 445 F.3d 50, 54 (1st Cir. 2006)). To survive a 12(c) motion, a plaintiff's complaint contain sufficient facts to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Perez–Acevedo*, 520 F.3d at 29 (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 559 (2007)). In ruling on a motion for judgment on the pleadings, the court should view the facts contained in the pleadings in the light most favorable to the non-moving party, supported by reason, and must draw all reasonable inferences in the non-movant's favor. *Id.* at 29.

III.   *Facts*

The plaintiff filed a Charge of Discrimination alleging sex discrimination and retaliation on August 31, 2016. (ECF No. 1, Compl. at ¶ 145; **Exhibit 1**, Plaintiff's Charge of Discrimination).[1] Three hundred days prior to the original filing date of the plaintiff's Charge, including the date of filing, is November 6, 2015. The allegations contained in the plaintiff's Complaint that fall within this 300-day window are noticeably thin.

The plaintiff was first hired as a traffic officer in 2008. (Compl.. at ¶ 15). At that time, Cioffi was a patrol officer. *Id.* at ¶ 16. The plaintiff and Cioffi quickly became friends and socialized together. *Id.* at ¶ 17. Cioffi was appointed the Chief of Police by the Board of Selectmen ("BOS") in

---

[1] On a Motion to Dismiss, a district court may consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *In re Colonial Mortgage Bankers Corp.,* 324 F.3d 12, 20 (1st Cir. 2003); *Giragosian v. Ryan,* 547 F.3d 59, 65 (1st Cir. 2008). A court may consider any documents incorporated into a complaint, including "documents the authenticity of which are not disputed by the parties; [ ] official public records; [ ] documents central to plaintiff's claim; or [ ] documents sufficiently referred to in the complaint." *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). When the complaint relies upon a document, whose authenticity is not challenged, such a document "merges into the pleadings" and the court may properly consider it under a Rule 12(b)(6) motion to dismiss. *Clorox Co. P.R. v.*

2009, while the plaintiff was appointed a special officer by the BOS at that same time. *Id.* at ¶¶ 18-19. In 2011, the plaintiff and Cioffi engaged in a sexual relationship that lasted until August 2014. *Id.* at ¶¶ 52, 122. The plaintiff alleges that she went out on a one year medical leave of absence, approved by the BOS, in January 2015 and did not return to Martha's Vineyard from both in-patient and outpatient treatment until seven months later, in August 2015. *Id.* at ¶¶ 131-35). There are no other factual allegations made about this time period. The plaintiff alleges that she decided to return to work in November 2015 and met with Cioffi on November 6, 2015. *Id.* at ¶¶ 136-137. This meeting is the very first factual allegation describing "adverse" conduct that falls within the 300-day filing period. The plaintiff alleges that Cioffi told her during their meeting that her "history of mood disorders" disqualified her from being a police officer. *Id.* at ¶ 138. This statement is in no conceivable way sexual in nature. The plaintiff alleges that, based on Cioffi's representations, she "tendered a resignation letter."[2] *Id.* at ¶ 143. Cioffi's statements to the plaintiff form the basis of her disability discrimination claim. Notably, by statute, the appointing authority for the Town is the Board of Selectmen, not the Chief of Police. *See* M.G.L. c. 41, Section 97. *See also Labor Relations Comm. v. Town of Natick*, 369 Mass. 431, 432 (1976) (referring to Section 97 as the "weak chief" law). All police department appointments, including special officers must be approved by a majority vote of the Selectmen. The plaintiff admits to being aware of this fact, as she sought and was granted her leave from the Board, not the Chief, in January 2015. *Id.* at ¶¶ 131-32. She also alleges and acknowledges her appointment was at the discretion of the BOS. *Id.* at 18. There are no other allegations that fall within either the 300-day statute of limitations window or the three-year statute of limitations period.

---

*Proctor & Gamble Commercial Co.,* 228 F.3d 24, 32 (1st Cir. 2000); *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33–34 (1st Cir. 2001).
[2] The plaintiff certainly incorporates the resignation letter into her Complaint by reference. It is attached hereto as **Exhibit 2**. Notably, it was admittedly tendered to Cioffi on November 6, 2015, but was dated the day prior. *Id.*

The plaintiff herself alleges in her Complaint that her sexual relationship with Cioffi ended in August 2014, more than a year prior to their meeting in November 2015, which occurred after she had been out on leave for eleven (11) months. *Id.* at ¶¶ 122; 131-143. She makes no factual allegations of any purported sexual harassment which occurred after August 2014. Additionally, the plaintiff allegedly disclosed her sexual relationship with Cioffi to her husband and his wife in late 2013. *Id.* at ¶¶ 82, 100. All allegations of any purported discrimination or retaliation cease in January 2015. The plaintiff's sole allegation of alleged misconduct occurring within the statute of limitations period pertains to Cioffi's statements made at a meeting on November 6, 2015, when he allegedly informed the plaintiff that her history of mood disorders disqualified her from police work, which she claims caused her to tender her resignation. *Id.* at ¶¶ 138, 143.

On September 21, 2018, the plaintiff was permitted to amend her Charge of discrimination to add a count for disability discrimination. (**Exhibit 3**, Plaintiff's Amended Charge of Discrimination). The defendants opposed, preserving their right to challenge the blatant deficiency in this forum. (**Exhibit 4**, Defendants' Opposition to Plaintiff's Motion to Amend at the MCAD).

IV.   *Argument*

    A.   <u>Plaintiff's Claims Arising Before November 6, 2015 Are Time-Barred.</u>

Under federal law, governing both Title VII and the ADA, "[a] claimant who seeks to recover for an asserted violation ... first must exhaust administrative remedies," either by filing a charge with the Federal Equal Employment Opportunities Commission ("EEOC") or "with an appropriate state or local agency, within the prescribed time limits." *Bonilla* v. *Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999). *See also Rivera-Diaz* v. *Humana Insurance of Puerto Rico*, 748 F.3d 387, 390 (1st Cir. 2014) ("The first component … contemplates the filing of an administrative charge within either 180 or 300 days of the offending conduct, depending on the particular jurisdiction in which the charged conduct occurs."). A plaintiff's failure to first file with either EEOC or, in the

case of Massachusetts, with the Massachusetts Commission Against Discrimination ("MCAD") "if unexcused, bars the courthouse door" as such a filing "is a prerequisite to the commencement of suit." *Bonilla*, 194 F.3d at 278. *See also Brader v. Biogen Inc.*, 362 F. Supp. 3d 25, 37 (D.Mass. 2019). "Massachusetts law imposes an identical exhaustion requirement; a plaintiff 'may maintain a civil action only if she has previous filed a timely complaint with the Massachusetts Commission Against Discrimination.'" *Brader, supra*, citing, *Christo* v. *Edward G. Boyle Ins. Agency, Inc.*, 402 Mass. 815, 525 N.E.2d 643, 644 (1988) and M.G.L. c. 151B, § 9. For a complaint to be timely, it must be filed with MCAD within 300 days of the alleged unlawful conduct. *Id. See also* 804 C.M.R. § 1.10(2); *Silvestris v. Tantasqua Regional School Dist.*, 446 Mass. 756 (2006). Here, all of the alleged conduct but for the November 6, 2015 meeting with Cioffi occurred more than 300 days before the plaintiff filed her Charge. As a result, any alleged acts of discrimination, harassment, or retaliation occurring prior to November 6, 2015 – which is 300 days before the filing date of August 31, 2016 – are time-barred and cannot form the basis for the plaintiff's claims.[3]

---

[3] In addition, on these facts, the plaintiff cannot invoke the "continuing violation" theory in an effort to encompass the time-barred acts outside the 300-day limitations period. In order to establish a continuing violation comprised of a *series of events*, the plaintiff must show that the discriminatory acts "emanate from the same discriminatory animus." *Noviello v. City of Boston*, 398 F.3d 76, 87 (1st Cir 2005) (citing *Provencher v. CVS Pharmacy*, 145 F.3d 5, 14 (1st Cir. 1998) (additional citations omitted) (observing, "…plaintiff [must prove a timely act forming a part of and exposing a pattern of actionable…harassment. *Merely residual effects of past discriminatory conduct, however, are not themselves acts of discrimination and therefore will not satisfy the anchor violation requirement*) (emphasis added). The plaintiff must also demonstrate that the time-barred events did not trigger an awareness of duty to assert her rights at the time they occurred. *See, e.g., Windross v. Barton Protective Services*, 586 F.3d 98, 103 (1st Cir. 2009) (continuing violation doctrine inapplicable where plaintiff considered the act of which he complained to be discriminatory at the time it actually occurred).

In this case, the plaintiff requested and received medical leave from January 2015 through the time that she met with Cioffi on November 6, 2015 to report her decision to retire, as documented on November 5, 2015. The plaintiff can offer no compelling reason to resurrect claims that arose well before November 6, 2015 nor is Cioffi's alleged statement on November 6, 2015 that she is disqualified from working because of her mood disorder part of a *series of events* or sexual in nature. Such an attenuated link utterly fails in terms of both substance and time. The plaintiff's Complaint makes clear that there were no sexually harassing acts after she terminated her relationship with Cioffi in August 2014. The statement that she was "disqualified from being a police officer" based on her mental health history also cannot form the basis of a retaliation complaint for alleged protected conduct occurring in 2013 (disclosure of the relationship) or 2014 (terminating the relationship). There is no case law to support that causation can be satisfied where temporal proximity is this attenuated absent additional, timely facts.

7

B.     <u>Claims arising more than three-years prior to the filing of the Complaint must be dismissed.</u>

The plaintiff's Complaint not only runs afoul of the administrative statute of limitations period, the vast majority of the factual allegations contained therein also fall well outside the three-year statute of limitations period applicable to claims under Title VII, Chapter 151B, the ADA, and Section 1983. *See, e.g.*, *Thomas v. Town of Salisbury*, No. CV 14–13726–JGD, 134 F.Supp.3d 633, 644, 2015 WL 5684074, at *7 (D.Mass. Sept. 28, 2015) ("In Massachusetts, claims brought under § 1983 are subject to a three year statute of limitations."), citing *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001); *Goldstein v. Brigham & Women's Faulkner Hosp., Inc.*, 80 F. Supp. 3d 317, 324 (D.Mass. 2015), citing *Alston v. Massachusetts*, 661 F.Supp.2d 117, 124 (D.Mass. 2009) and *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, n. 11 (2001) (claims under chapter 151B are "subject to two statutes of limitations," 300 days and three years); *Sigros v. Walt Disney World Co.*, 190 F. Supp. 2d 165, 168 (D.Mass. 2002) (The Massachusetts statute of limitations for personal injury actions provides the limitations period for plaintiffs' ADA claims).

The Complaint was filed on October 26, 2018, which means only claims anchored within the time period of October 26, 2015 forward are viable. The sole event falling within this window is the meeting with Ciofi that occurred on November 6, 2015, after which the plaintiff tendered her resignation. For the reasons already described herein, the plaintiff's claims for sex discrimination/sexual harassment, disability, and retaliation under both state and federal anti-discrimination statutes and the Fourteenth or First Amendment (the Section 1983 claims), insofar as they relate to acts occurring prior to October 26, 2015 are time barred and must be dismissed.

C.     <u>Plaintiff's Retaliation Claims Are Legally Untenable.</u>

Even if the plaintiff had not already decided to resign on November 5, 2015 (as her letter delivered on November 6, 2015 clearly indicates), her retaliation claims fail because the factual allegations in the Complaint cannot support the requisite element that Cioffi's conduct in

8

purportedly informing the plaintiff that she could not return to work because of her "documented mood disorders" was in any way causally related to any alleged protected conduct. Additionally, the plaintiff did not suffer an adverse action within the meaning of the law. Finally, she has not pleaded sufficient facts to sustain that she engaged in legally recognized protected activity.

First, proving causation is impossible on these facts. The plaintiff alleges that Cioffi retaliated against her because she terminated her relationship with him and because she disclosed their sexual relationship to their spouses in 2013. *Id.* at ¶¶ 82, 100. Notably, her sexual relationship with Cioffi ended in August 2014, more than a full year prior to the November 2015 meeting. After the sexual relationship ended, the plaintiff worked for the Town for an additional five months and before going out on medical leave for an eleven (11) month period. *Id.* at ¶¶ 122; 131-143. There are no allegations relating to any purported sexual harassment after August 2014.

Without more, the sole allegation that Cioffi told the plaintiff that he believed that her documented mood disorders precluded her from being a police officer, after she had returned from mental health leave more than a year after their relationship ended, is insufficient to support her claim of retaliation. The timing of the alleged retaliatory act is too attenuated from the alleged protected conduct to sustain a claim for retaliation under Chapter 151B, Title VI, or the Fourteenth/First Amendment under Section 1983.  "The cases that accept mere temporal proximity between an employer's knowledge of a protected activity and an adverse employment action as sufficient evidence of causality … uniformly hold that the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (quoting *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (10th Cir.2001)) (noting that periods of three and four months have been held insufficient). *See also Morón–Barradas v. Dep't of Educ. of Commonwealth of P.R.,* 488 F.3d 472, 481 (1st Cir. 2007) ("[M]ore than eight months ... is ... insufficient to establish temporal proximity.").

In *Harrington v. Aggregate Industries Northeast Region, Inc.,* 668 F.3d 25 (1st Cir. 2012), the First Circuit held that an alleged whistleblower who was fired after he refused to take a drug test, had shown causation, relying on evidence of "very 'close temporal proximity' (72 hours), deviations from the employer's drug testing protocol, inconsistences in the employer's accounts of the reasons for the drug test, and the '[c]oincidence[ ]' that the employee was singled out for a purportedly random drug test on his first day permanently back at work after his whistleblowing activities came to light." *Abril-Rivera v. Johnson*, 806 F.3d 599, 610 (1st Cir. 2015), quoting *Harrington, supra*, 688 F.3d at 32–34. Here, in contrast with *Harrington* and similar to the facts in *Abril-Rivera*, there is no temporal proximity, and the Complaint contains no other facts giving rise to an inference of prextext, such as shifting explanations for deviations from protocol or improbable "coincidences" akin to those in *Harrington. Abril-Rivera*, 806 F.3d at 609-11. Similar to the plaintiff's claim in *Abril-Rivera*, the plaintiff's claim cannot withstand dismissal.

Further, the plaintiff had been granted medical leave by the BOS (appointing authority), not Cioffi. Thus, when the plaintiff discussed a possible return to work during the November 5th meeting, Cioffi did not have the authority to refuse to allow the plaintiff to return to work. That authority is vested solely in the BOS. Accordingly, the plaintiff cannot show she suffered an adverse employment action when she had requested leave from the Board and, in order for her to return, needed to get approval from the same appointing authority.

Besides the causation deficiency, which is fatal, in order to establish a *prima facie* case of unlawful retaliation, the plaintiff must sufficiently plead that 1) she was engaged in protected activity; 2) that the defendants were aware that plaintiff was engaged in protected activity; 3) that the plaintiff suffered an adverse employment action; and 4) that a causal connection existed between the protected activity, known by the retaliator, and the adverse employment action. *See Bhatti v. Trustees of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011) (noting that the same legal framework applies to both

10

Title VII and Section 1981 claims for which Section 1983 constitutes the exclusive federal remedy). *See also Beal v. Board of Selectmen of Hingham*, 419 Mass. 535, 541 (1995) (Massachusetts follows the *McDonnell Douglass* burden shifting framework in employment discrimination cases pursuant to Chapter 151B); *Geras v. Hempstead Union Free School Dist.*, 149 F. Supp. 3d 300, 338-339 (E.D.N.Y. 2015) (the familiar *McDonnell Douglass* burden shifting framework applies to Section 1983 claims based on employment discrimination).

On the facts alleged, the plaintiff's retaliation claims cannot survive a Motion to Dismiss because there are no facts to support the notion that the plaintiff engaged in any protected activity prior to the purported act of retaliation on November 6, 2015. The plaintiff's Charge was not filed until well after she had admittedly resigned, rendering it inapplicable to this analysis, and there are no allegations in the Charge to support that the plaintiff had engaged in any other conduct that would qualify as protected activity. Employee protected activity generally falls into two categories: (1) participation, such as filing a claim or assisting in a sexual harassment investigation; or (2) opposition to unlawful employment practices. Here, the plaintiff has not alleged sufficient facts to support engagement in either form of protected activity known to the defendants prior to the purported act of retaliation. Rather, she claims that she disclosed her inappropriate sexual relationship with Cioffi to their respective partners in 2013, and ended the sexual relationship with Cioffi in August 2014. Neither of these allegations contains sufficient facts to show that the plaintiff engaged in protected conduct within the meaning of the law within the statute of limitations.

Nonetheless, even if the plaintiff had engaged in some conduct that qualified as protected activity, there are insufficient facts alleged to support that she suffered an adverse employment action. The plaintiff admits that she decided to resign. She alleges no facts supporting that she requested to be reinstated and was denied reinstatement by the appointing authority. Cioffi offering

11

his opinion to the plaintiff regarding her eligibility when he is not the decision maker cannot be considered an adverse employment action.

An adverse employment action must carry with it tangible consequences. Cioffi informing the plaintiff as to his belief that the she could not return to work as a police officer with "documented mood disorders" – even if true – is not a "tangible consequence", the latter of which is a well settled requirement under *Bhatti v. Trustees of Boston University*, 659 F.3d 64, 73 (1st Cir. 2011). Whether an employment action is considered adverse requires an objective, rather than subjective, inquiry. *Blackie v. Maine*, 75 F.3d 716, 725-26 (1st Cir. 1996). An objective evaluation of the facts pleaded lends itself to only one possible conclusion: that the plaintiff was not terminated or constructively discharged; rather, on her best day, she was told by Cioffi that her conditions precluded her from being a police officer and, in response, she resigned instead of seeking reinstatement from the appointing authority. Based on the allegations contained in the Complaint, it is undisputed that Cioffi took no tangible action that resulted in an adverse consequence that is recognized by the law. Notably, in *Blackie v. Maine*, the First Circuit noted, "the mere fact that an employee is *displeased* by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Blackie*, *supra*, 75 F.3d 716, 725-26 (1st Cir. 1996).

For these reasons, the plaintiff's retaliation claims, pleaded under Counts VI, VII, and VIII, must be dismissed.

    D.    <u>The plaintiff did not bring her disability claims in a timely fashion.</u>

Counts II and V allege disability discrimination under Chapter 151B and the ADA. The plaintiff did not file a Charge alleging disability discrimination within the 300-day statute of limitation period. Rather, apparently after receiving the defendants' Motion to Dismiss and Position Statement, and realizing that she had missed the statute of limitations as to her sexual harassment

12

and retaliation claims, she filed a Motion to Amend her Charge to add claims for disability discrimination well outside the statutory period, despite being on notice of those claims from the initiation of her initial Charge.

Both Massachusetts Courts and the Commission have consistently held that, pursuant to M.G.L. c. 151B, § 5, complaints filed beyond the 300-day filing period cannot be sustained. *Silvestris v. Tantasqua Regional School Dist.*, 446 Mass. 756 (2006); *Morin v. Murida Furniture Co.*, 2009 Mass. Super LEXIS 401, 9-10 (Mass. Super. Ct., Sept. 29, 2009) ("Under G.L. c. 151B, § 5, any claim … must be filed within 300 days of the occurrence of the alleged conduct."). The plaintiff added entirely new, unrelated allegations of disability-based discrimination far beyond the statutorily permitted time period, entirely changing course in order to stave off dismissal at the MCAD.

The plaintiff relied on 804 C.M.R. § 1.10(6)(a) to support her Motion to Amend. That regulation allows a Charge to be amended and "relation back" to the date of the initial Charge *only* where there are additional acts of discrimination that relate to or arise out of *the subject matter of the original complaint*. Such is simply not the case here. The plaintiff's allegations in her original Charge claim that she was discriminated against on the basis of her gender and that her past sexual relationship with Cioffi was the discriminatory and retaliatory reason for her not being permitted to return to work in November 2015. The plaintiff never even suggested that her "mood disorder" was the basis for any adverse action taken by the defendants. In fact, the plaintiff actually alleged in her original Charge that her "mood disorder" was the *pre-textual* reason offered by Cioffi to hide his discriminatory animus based on her sexual relationship with him. (*See* Exhibit 3). If, as the plaintiff now paradoxically claims in her Complaint, her mood disorder was, in fact, the *real* reason given for Cioffi's actions, then it cannot also be the *pre-textual* reason, and her sex discrimination and retaliation claims must fail outright. The plaintiff cannot have it both ways. Her addition of a

disability discrimination claim apparently brought to avoid the statute of limitations defies logic and is entirely fatal to her prior claims for sex discrimination and retaliation.

Finally, the plaintiff relied on the "scope of the investigation" rule to argue that allowing her to amend and relate back was proper. The "scope of the investigation" rule is applied to determine if a plaintiff has properly exhausted her administrative remedies prior to filing a Superior Court complaint. *See Cook v. Entergy Nuclear Operations, Inc.,* 948 F.Supp.2d 40, 47 (D. Mass. 2013) (plaintiff who never alleged a failure to accommodate claim at the MCAD failed to exhaust administrative remedies and the court lacked jurisdiction over that claim). The rule does not apply to situations such as this where the plaintiff missed the statute of limitations and attempts to salvage an otherwise untimely claim by tacking it onto a completely unrelated claim of discrimination. Again, important to this analysis, the plaintiff was on notice of the alleged conduct that forms the basis of her disability claim at the time she filed her initial Charge.

Here, the plaintiff's disability claim is time-barred. It simply does not relate to or arise out of her original claims. If the plaintiff is permitted to proceed with her disability claim because she alleges that it was the discriminatory reason given for the defendants' purported adverse action and not the pre-textual reason given to cover their sex-based decision, then the plaintiff's claims for sex discrimination and retaliation fail for this reason, in addition to the other reasons argued herein.

For these reasons, Counts II and V should be dismissed in their entirety.

E. <u>Plaintiff's First Amendment Claim Also Fails Under *Garcetti*.</u>

The plaintiff's speech falls outside the scope of First Amendment protection. The First Amendment protects a public employee's right, in prescribed circumstances only, to speak freely as a citizen on matters of public concern. *See Connick v. Myers,* 461 U.S. 138, 146 (1983). Notably, there is not "a constitutional cause of action behind every statement a public employee makes in the course of doing his or her job." *Garcetti v. Ceballos,* 547 U.S. 410, 426 (2006). Such is the case here. Each of

the inquiries below involves a question of law for the court's determination. *Connick,* 461 U.S. at 148 n. 7.

    1. <u>The plaintiff's speech was not made as a citizen, nor did it relate to a matter of public concern.</u>

Only certain "contributions to the civic discourse" are entitled to First Amendment protection. *Id.* at 422. The first prong of the inquiry is whether the employee spoke as "a citizen addressing matters of public concern." *Id.* at 417. As the First Circuit has noted, "this first step itself has two sub-parts: (a) that the employee spoke as a citizen and (b) that the speech was on a matter of public concern." *Curran v. Cousins*, 509 F.3d 36, 45 (1st Cir. 2007). If either of these preliminary inquiries is answered in the negative, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti,* 547 U.S. at 418.

Here, the plaintiff has failed to plead sufficient facts to meet the threshold of part (b) of prong one. The plaintiff alleges that she disclosed her several yearlong sexual and adulterous relationship with Cioffi to her husband and Cioffi's wife. (Compl. at ¶ 100). The fact that the plaintiff was having an affair, and chose to disclose that fact to her spouse and Cioffi's spouse, does not constitute her speaking on a matter of public concern. While she alleges that she wanted to disclose her relationship publicly, she did not do so. In no conceivable way was the plaintiff's disclosure to her spouse and Cioffi's wife made "to provide members of society with information necessary to make informed decisions about government operations, to disclose public misconduct, or to inspire public debate on a matter of significant public interest." *Meaney v. Dever*, 326 F. 3d 283, 289 (1st Cir. 2003). Rather, the plaintiff was reporting to her husband that she had been committing adultery for a lengthy period of time, and that Cioffi had been doing the same. While this information was certainly of concern to the respective spouses, it was not a matter of "public concern", nor are there any factual allegations contained in the Complaint to support that the plaintiff objectively treated it as such.

Any First Amendment claim and related claim for retaliation fails outright.

    2.    <u>Any purportedly "protected speech" was not a substantial or motivating factor in any adverse employment action.</u>

According to the Complaint, the disclosure to the spouses occurred in 2013. To prevail, the plaintiff must show that some adverse employment action flowed from her disclosure within the statute of limitations. As addressed in detail, *supra*, the plaintiff has not pleaded sufficient facts to sustain a claim that any adverse action that occurred within the statute of limitations period flowed from her supposed protected speech. Moreover, as discussed previously, the plaintiff did not suffer an adverse action within the meaning of the law on November 6, 2015.

Count VIII as it related to the First Amendment should be dismissed entirely.

    F.    <u>Cioffi cannot be liable for aiding and abetting as he was the principal actor.</u>

The law is clear that an individual cannot be liable for sex or disability discrimination under M.G.L. c. 151B. *See, e.g.*, *Welgoss v. Dep't of Transp.*, No. CIV.A. 2012-1549-C, 2013 WL 4007929, at *2 (Mass. Super. June 21, 2013); *Barnes, et al. v. Sleek, Inc. et al.*, 2011 WL 1034390, at *9 (MCAD, 06-BEM-01275, March 15, 2011); *Ruffino v. State St. Bank & Trust Co.*, 908 F. Supp. 1019, 1048 (D. Mass. 1995).[4] The plaintiff attempts to circumvent the prohibition of the aforementioned case law and the express language of the statute as enacted by the Legislature by labeling Count III as a claim for aiding and abetting against Cioffi (a claim that the defense acknowledges is permitted against individuals under M.G.L. c. 151B, §4(5)). The inherent fatal flaw with the plaintiff's claim is that she failed to plead any facts to support allegations that Cioffi aided and abetted anyone in discriminating against her when he

---

[4] Individual liability can avail only "under three different subsections of Chapter 151B, which apply to any 'person' rather to any 'employer.' These subsections prohibit retaliation (G.L. c. 151B, § 4(4)), coercion, intimidation, threats or interference with another's right to work free of unlawful discrimination and retaliation (G.L. c. 151B, § 4(4A)), and aiding and abetting … (G.L. c. 151B, § 4(5))." *Welgoss, supra.*

16

allegedly told her she was disqualified from returning to work due to her mental health. Rather, the plaintiff alleges that Cioffi himself – directly – discriminated/retaliated against her. (*See* Compl. ¶¶ 133-143). Even the time-barred allegations all describe direct acts of discrimination and/or retaliation by Cioffi. The aforementioned allegations simply do not support a claim for aiding and abetting and it is clear that the plaintiff is relying on M.G.L. c. 151B, §4(5) to circumvent the statute's prohibition against individual liability for the categories of alleged discrimination outlined in her Complaint.

In order to make out a claim for aiding and abetting under M.G.L. c. 151B, §4(5), a plaintiff must plead sufficient facts to support that that (1) the defendant committed (1) 'a wholly individual and distinct wrong ... separate and distinct from the claim in main'; (2) 'that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender'; and (3) that 'the aider or abetter knew of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under G.L. c. 151B..'" *Lopez v. Com.*, 463 Mass. 696, 713 (2012), quoting *Harmon v. Malden Hosp.,* 19 Mass. Discrimination L. Rep. 157, 158 (1997). (*See also* **Exhibit 5**, Order and Decision, *Lees v. Massachusetts Department of State Police, et al.*, Worcester Sup. Ct., June 2019). Here, as outlined above, the plaintiff alleges that Cioffi discriminated against her directly. The plaintiff's Complaint fails to allege that Cioffi "committed a distinct, underlying act of employment discrimination from which the aiding and abetting claim may be said to derive." *Id.* at 713-714. Simply put, Cioffi cannot aid and abet himself in discriminating against the plaintiff. It is disingenuous to suggest that Cioffi's alleged conduct was "a wholly individual and distinct wrong" that was "separate and distinct from the claim in main" nor can the allegations

support that he played some sort of "supporting role" here. *See id.* at 713. Rather, Cioffi discriminated against the plaintiff because of her sex or disability, his employer is liable for that conduct if the requisite showing is made. There is no individual liability claim for aiding and abetting on these facts.

V.  *Conclusion*

For the reasons stated herein, the Counts I-VI and VIII (in part) should be dismissed.

> Respectfully submitted,
> The Defendants,
> By their attorney,
>
> */s/ Michael Stefanilo, Jr.*
> Michael Stefanilo, Jr., BBO No. 684500
> Leonard H. Kesten, BBO# 542042BRODY,
> HARDOON, PERKINS & KESTEN, LLP
> 699 Boylston Street, 12th Floor
> Boston, MA 02116
> (617) 880-7100
> lkesten@bhpklaw.com
> mstefanilo@bhpklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

> */s/ Michael Stefanilo, Jr.*
> Michael Stefanilo, Jr., BBO No. 684500

Dated:  July 3, 2019